(99 South. 633)

No. 24908.

STATE ex rel. McWILLIAMS v. ATCHAFALAYA-TECHE-VERMILION CO., Inc.

(March 10, 1924. Rehearing Denied by Division C April 7, 1924.)

*(Syllabus by Editorial Staff.)*

Corporations ⬡59—Creditor with unliquidated claim held to have no right to mandamus to allow inspection of books of debtor corporation.

A contractor, who had performed dredging work for a corporation supplying water for irrigation purposes, could not, as a creditor, before having obtained judgment, compel the corporation by mandamus to allow him to inspect its books to ascertain if he could obtain sufficient funds from contributions from stockholders and those owing water rents to satisfy his judgment if he should succeed in obtaining one; Const. 1913, art. 273, relating to inspection of corporate books, being inapplicable, and relator not bringing himself within Corporation Act, §§ 9, 12, and 13.

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Mandamus by the State, on the relation of G. A. McWilliams, against the Atchafalaya-Teche-Vermilion Company, Inc. An exception of no cause of action was overruled on the merits, rule made absolute, mandamus issued, and defendants appeal. Judgment annulled, and relator's demand dismissed.

Mouton & Debaillon, of La Fayette, and Monroe & Lemann, of New Orleans, for appellants.

Burke & Smith, of New Iberia, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. Defendant company was organized mainly for the purpose of furnishing necessary water to rice planters on the Bayou Teche and along the Bayou Vermilion for the purpose of irrigating their fields. In order to accomplish this object, said company entered into a contract with relator for dredging in Bayou Courtableu, thence in Bayou Teche, and the dredging of a cut-off or canal between Bayou Teche (at a point below Breaux Bridge) and Bayou Vermilion and further dredging in Bayou Vermilion.

After completing a large portion of the work, and after the failure of defendant company to pay for same, and after its refusal to grant any conference to relator with its proper officers for the purpose of bringing about an adjustment, the present mandamus proceeding was resorted to by relator to compel the president of said company to convoke a meeting of the board of directors to enable relator to discuss directly with the company's officers, or its directors, the matter at issue between the parties, and also to compel them to place at the disposal of relator all of the books, accounts, and records of defendant corporation, to the end that he might exercise his constitutional right to inspect them.

Defendant company pleaded an exception of no cause of action to the petition of relator. This exception was overruled by the lower court, and on the merits the rule was made absolute and the mandamus issued, ordering defendant company to place at the disposal of plaintiff, or his agent, all the books, accounts, and records of said company. The appeal before us is by defendant company from this judgment.

Plaintiff has waived in his brief the discussion of the right to mandamus the board of directors to meet, stating that this issue is no longer vital. The only issue before us, therefore, is relator's right to inspect the books, accounts, and records of defendant company.

Relator's right to examine the books of defendant corporation at its office is predicated upon the following allegation in his petition:

"Petitioner further declares that inasmuch as the payment of the large sum due him is dependent on the collection of the contributions due by all stockholders, or from water rents, as the case might be, he is entitled to exact of the corporation the performance of its duties in the matter of collecting sufficient funds for the purpose of meeting these obligations. That in order to ascertain to what extent monies have been collected, from whom collected, and from whom collectable, he is entitled to exercise the constitutional rights of inspecting the books, accounts, and every document belonging to said corporation. That through his agent he has made a demand for an inspection of these books, and the same has been refused nor has any statement been given to him in lieu thereof."

Relator's petition discloses the fact that he has a suit pending in the Eighteenth judicial district court for the parish of Lafayette for the purpose of enforcing the collection of his claims.

Under article 273 of the Constitution of 1913, which was in force when this cause was filed, corporations are required to maintain an office "where transfers of stock shall be made, and where shall be kept for public inspection books in which shall be recorded the amount of capital stock subscribed, the names of owners of stock, the amounts owned by them respectively, the amount of stock paid, and by whom, the transfers of said stock, with the date of transfer, the amount of the assets and liabilities, and the names and places of residence of its officers."

"By 'public inspection,' as used in said article of the Constitution, is meant, not the inspection of the idle, the impertinent, or the curious, those without an interest to subserve or protect, but the inspection by those with a laudable object to accomplish, or a real and actual interest upon which is predicated the request for information disclosed by the books." Bourdette v. New Orleans Gaslight Co., 49 La. Ann. 1556, 22 South. 815; Bourdette v. Sieward, 107 La. 265, 31 South. 630.

Relator does not pretend in the case that there is any document or other evidence in the possession of defendant company which it is necessary for him to have on the trial of his case in order to establish his claim. If such were the case, a remedy is amply provided by resorting to a subpœna duces tecum directed to defendant company and ordering the production of such books, papers, or other documents which may be in its possession and material to the cause, on its trial. C. P. art. 140.

But relator's contention here is that, as a creditor with a claim, wholly unliquidated, and not yet merged into a judgment, he 'has the constitutional right to demand an inspection of the books and papers of defendant company, in advance of obtaining a judgment, and for the sole purpose of ascertaining if he can obtain sufficient funds from contributions from the stockholders, and from those who may owe water rents to defendant company, to satisfy his judgment, if he should succeed in the prosecution of his suit.

Obviously, relator's claim of right to inspect the books and papers of defendant company is based upon a mere contingency, which may never happen, and not upon actual interest already fixed and determined.

"But the right to inspect the books [of a corporation] is not so absolute that mandamus will issue without regard to facts and circumstances. * * * Though the right to inspect is the rule, and it is very seldom proper for the officers of a company to refuse to allow the examination, the refusal is justifiable when curiosity is the motive or when the object is manifestly in opposition of the interest of the company." Legendre Co. v. Brewing Ass'n, 45 La. Ann. 671, 12 South. 837, 40 Am. St. Rep. 243; Scott v. President, 46 La. Ann. 280, 14 South. 521; Marsh v. Sanders, 110 La. 732, 34 South. 752.

The purpose of the framers of the Constitution of 1913 in writing article 273 into that instrument was to safeguard, primarily, the interests of stockholders in corporations, and also of investors invited to trade in the stock or shares of such corporations, by securing to them the information, by right of public inspection, which might be disclosed by the books of such corporations. State ex rel. Bourdette v Gaslight Co., 49 La. Ann. 1559, 22 South. 815.

The right of a stockholder to examine the books of a corporation in which he owns stock is based upon his actual pecuniary interest. His right to participate in the dividends, and to investigate the management of the corporate affairs, in order to determine the present value of his holdings and his future action in reference to the stock of the company, naturally flows from and is based upon such interest, and upon his status as a stockholder. Such right of public inspection arising from actual and fixed interest, already acquired, and undisputed, and from the relationship of the stockholder to the corporation, of which he is a member, is essentially different from that of a mere outside creditor with an unliquidated claim. The stockholder's interest is necessarily linked with the success of the corporate enterprise, and with keeping intact its assets, while that of a creditor is opposed to the welfare of the corporation, in that he seeks to subject its assets to the payment of his claims, even if the result be to put an end to its operation as a going concern. Should we hold that a creditor, with a mere unliquidated claim, has the arbitrary right, prior to judgment, to subject to his scrutiny the books of a corporation, we would open the door to the utter ruin of many corporations in this state by their competitors, who, by the mere purchase of unliquidated claims, which eventually might prove to be without foundation, would possess the "open sesame" to enter immediately into an investigation of the financial condition of any corporation in the state, at any time, and thereby secure the means of wrecking it at will, in many cases, in order to

subserve the selfish interests of such competitors.

The law in its wisdom and prudence has placed its protecting ban upon such unreasonable inquisitions upon the part of mere creditors with claims unliquidated, and has refused to recognize the right of a creditor to inspect the books of a corporation prior to judgment.

High, in his Extraordinary Legal Remedies, par. 312, (3d Ed.), states the law on this subject in the following language:

"Similar relief may be allowed in behalf of a judgment creditor when it is necessary for the proper enforcement of its rights under its execution. And when, under the laws of the state, a judgment creditor of an incorporated company is entitled to an execution against such shareholders as have not paid their shares, in satisfaction of his judgment, he may be allowed the aid of mandamus to compel the company to permit an inspection of its books, for the purpose of ascertaining who are the shareholders, and the amount remaining unpaid upon their respective shares."

In Spelling on Injunction and Other Extraordinary Remedies, par. 1604 (2d Ed.), the law is thus stated:

"The right is generally given by statute to creditors, as well as stockholders, to make inspection of the stock registry of corporations organized for profit. And when a personal liability is imposed upon stockholders in favor of creditors in connection with such rights, and execution thereon had been returned unsatisfied, it might be necessary as the only means of making such personal liability available, to ascertain the name of the stockholders from the books. Under these circumstances, mandamus will lie on behalf of a creditor."

Under section 12 of Act 267 of 1914, the Corporation Act of this state, it is provided:

"That every subscriber to the capital stock of a corporation, though not a holder, shall be personally liable to the creditors of the corporation to an amount equal to the unpaid balance on the stock * * * subscribed."

It is also provided in section 13 of said act:

"That except in case of insolvency or bankruptcy proceedings, and except as provided in section 9 of this act, no action to recover an unpaid balance of stock subscriptions shall be brought against any stockholder until judgment has been recovered against the corporation and an execution returned unsatisfied in whole or in part."

Section 9 of said act declares:

"That subscriptions to the capital stock of a corporation shall be paid at such times and in such installments as the board of directors may direct, unless otherwise provided by this act. If default be made in the payment of any installment, the board of directors may sue and recover the unpaid balance of the subscription, together with a reasonable attorney's fee."

As defendant company is not alleged to be insolvent, or in bankruptcy, the relator as creditor of said company does not fall within any of the exceptions provided in section 13 of said act, and has no action against any stockholder of defendant company, until after judgment has been recovered against said company, and execution has been returned unsatisfied in whole or in part. As no judgment has yet been obtained by relator, under the well-settled law, as announced in both High and Spelling, cited above, mandamus will not lie on behalf of relator as a creditor, at this stage of the proceedings, to compel the defendant company to allow to him the right of inspection of its books. The writ of mandamus was therefore erroneously issued by the trial judge under the circumstances of this case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and that relator's demand for the issuance of the writ of mandamus, at this time, to defendant company, to enforce his right of inspection of its books, be dismissed; relator to pay all costs of this proceeding.

Rehearing refused by Division C, composed of Justices OVERTON, ST. PAUL, and THOMPSON.